UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID KOSKE,<br>  Plaintiff | )<br>)<br>)<br>) | |
| v. | )<br>) | Civil Action No. 04-30181-MAP |
| TEXON USA, INC.,<br>  Defendant | )<br>)<br>)<br>) | |

REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S
MOTION FOR ENTRY OF DEFAULT JUDGMENT (Docket No. 10)
November 10, 2005

NEIMAN, U.S.M.J.

This action has been referred to this court by District Court Judge Michael A. Ponsor for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) regarding a motion for the entry of a default judgment brought by David Koske ("Plaintiff"). Texon USA, Inc. ("Defendant") has not filed an appearance or otherwise responded to the complaint. An evidentiary hearing on Plaintiff's motion for default judgment was held on November 7, 2005. For the reasons described below, the court will recommend that a default judgment enter in Plaintiff's favor in the amount of $15,300.

I. BACKGROUND

The complaint filed by Plaintiff on September 14, 2004, has four counts. Count I alleges that Defendant refused to accommodate Plaintiff's disability and terminated him in violation of section 102 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12112.  Count II alleges that Defendant similarly violated Mass. Gen. L. ch. 151B, § 4(16) ("Chapter 151B").  Count III alleges a violation of Mass. Gen. Laws ch. 152 (chapter 152), § 75(A), which requires that any person who has lost a job compensable by workers compensation "be given preference in hiring by the employer."  And Count IV alleges that Defendant violated Mass. Gen. L. ch. 152, § 75(B)(2), which provides that "[n]o employer . . . shall discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by" the Commonwealth's workers compensation laws.

On September 9, 2005, Plaintiff, having obtained a default against Defendant, filed the instant motion for default judgment, accompanied by a memorandum of law. On October 20, 2005, the court scheduled a hearing on the motion, stating the following:

> Based on the well-pleaded allegations of the complaint, the court intends to recommend a finding of liability. Nevertheless, Plaintiff will be expected at the hearing to present evidence, including testimony if necessary, establishing the damages sought.  See Eisler v. Stritzler, 535 F.2d 148, 153-54 (1st Cir. 1976).

The hearing was held on November 7, 2005, and Plaintiff himself testified.

## II.  FINDINGS OF FACT

The court makes the following findings of fact.  Plaintiff injured his back on or about February 4, 2004, in the course of his employment with Defendant.  He was working at the time as a machinist earning $560 per week.  Immediately after his injury, Plaintiff began to receive approximately $336 in weekly workers compensation benefits,

2

calculated at sixty percent of his earnings.  He underwent surgery on June 13, 2000, leaving him with a permanent partial impairment of his lower back and preventing him from returning to his previous position as a machinist.

On or about February 6, 2001, Plaintiff accepted a light duty position as a custodian with Defendant at twenty hours per week, for which he earned an average of $250.  In addition, Plaintiff received approximately $186 in weekly workers compensation benefits, *i.e.*, a percentage of the differential from his previous salary as a machinist.  In total, therefore, Plaintiff received $436 per week or exactly $100 more per week than he had received during the period in which he was deemed totally disabled.

Plaintiff continued to work in this light duty position until April 25, 2002, the day he notified Defendant that he would have to undergo further surgery.  Defendant, Plaintiff testified, immediately told him that his custodial position was being eliminated as of April 29, 2002, and that he would only be offered continued employment as a custodian through an agency which handled temporary work assignments.

Plaintiff immediately underwent further surgery and his weekly workers compensation benefits were reinstated to approximately $336 per week.  These payments continued until March 26, 2004, when he settled his workers compensation claim before the Department of Industrial Accidents.  In the meantime, in or around October of 2002, he had again been told by his doctor that he could resume light duty work.  Plaintiff only found such light duty employment as a bus driver on or about August 31, 2004, earning about $250 per week.

II.  DISCUSSION

In conformance with the court's scheduling order, the court will recommend a finding that Defendant is liable to Plaintiff for violations of chapter 152 (Counts III and IV) as well as the ADA and chapter 151B.  Therefore, as framed by Plaintiff's motion for a default judgment, the only question is the amount of compensatory damages to which Plaintiff is entitled under these statutes.  See 42 U.S.C, § 1981a(a)(2) (successful ADA plaintiff suing for disability discrimination under 42 U.S.C. § 12112 is entitled to "compensatory" damages); Mass. Gen. L. ch. 151B, § 9 (chapter 151B petitioner may be awarded "actual" damages); Mass. Gen. L. ch. 152, § 75A (liable employer required to pay employee's "lost wages"); Mass. Gen. L. ch. 152, § 75B(2) (same).

Plaintiff's claim for damages can be broken down into four components: (1) lost value of health insurance benefits; (2) lost compensation from October of 2002, when his doctor determined that he could return to light duty work, to March 26, 2004, when he settled his workers compensation claim; (3) lost compensation from March 26, 2004, to August 31, 2004, when he found light-duty employment; and (4) emotional distress damages.  The court will address each component in turn.

1. Lost Health Insurance Benefits

Although Plaintiff claims he was no longer afforded family health insurance benefits (at no charge) as the result of his termination, the court finds he suffered no damages as a result.  Plaintiff's testimony revealed that the $175 his wife was paying for family health insurance post-termination -- and upon which he based his calculation of damages -- was the amount she had been paying *before* his termination as well.

4

Plaintiff testified that he and his wife decided to pay for that policy pre-termination because it provided more comprehensive benefits, *i.e.*, dental coverage. In effect, Plaintiff's wife's policy was their primary family insurance, to be supplemented if at all by the insurance offered at no cost through Defendant. Accordingly, the court will recommend no award for lost health insurance benefits.

    2. <u>Lost Compensation for October, 2002 through March 26, 2004</u>

The compensation lost in this time period resulted from Plaintiff's not being able to return to light duty work with Defendant, although cleared to do so by his doctor, because Defendant had eliminated his position. This effectively cost Plaintiff $100 per week, *i.e.*, the difference between the workers compensation he was receiving, $336, and $436, the total amount he would have received in weekly earnings ($250) plus supplemental workers compensation benefits ($186) had he been rehired. This time span covers seventy-eight weeks, resulting in damages, in the court's view, of $7,800.

    3. <u>Lost Compensation for March 26, 2004 through August 31, 2004.</u>

A somewhat different calculation of damages has been offered by Plaintiff for this second time period. In essence, Plaintiff claims, he lost $250 weekly in light duty work he could have done for Defendant had his custodial position not been eliminated at least until he found substitute employment on April 31, 2004, at approximately the same weekly rate. Plaintiff, it should be noted, does not claim to have been able to return to his former job as a machinist.

Unfortunately for his cause, Plaintiff has not demonstrated that he adequately sought to mitigate his damages in this time period. In addition, Plaintiff's counsel

5

suggested at the hearing that the lump sum workers compensation settlement might have to be taken into account. Given the absence of clarification on these points, the court suggests that no damages be awarded for this time period.

4. Emotional Distress

Plaintiff testified that he suffered emotional distress as a result of the termination of his job slot as of April 29, 2002, and seeks damages as a result. *See* 42 U.S.C. § 1981a(b)(3) (listing "emotional pain, suffering, inconvenience, [and] mental anguish" as part of ADA compensatory damages); *Dalrymple v. Town of Winthrop*, 740 N.E. 2d 204, 206 n.5 (Mass. App. Ct. 2000) ("emotional distress" damages awardable under chapter 151B). Plaintiff claims to have been distressed at the prospect of not being able to support his family, of being "down and out" and depressed, and of drinking heavily for about one year. Although Plaintiff did not seek psychological counseling and some of his distress can no doubt be attributed to his physical disability and pain, he has, in the court's opinion, offered sufficient evidence of emotional distress for this period of time. Having considered all the evidence presented, the court suggests, as appropriate, an award of $7,500 in emotional distress damages.

III. CONCLUSION

For the reasons stated, the court recommends that Plaintiff be awarded $15,300 in damages.[1]

---

[1] The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically

DATED: November 10, 2005

                                                                /s/ Kenneth P. Neiman
                                                        KENNETH P. NEIMAN
                                                        U.S. Magistrate Judge

---

identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.